**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James H. GADDY,
Defendant–Appellant.**

**Nos. 89–3037, 89–3038.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1990.

Decided July 26, 1990.

As Amended July 26, 1990.

Daniel P. Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Stephen J. Meyer, Vanmetre, Hanson & Meyer, Madison, Wis., for defendant-appellant.

James Gaddy, Chicago, Ill., pro se.

Before WOOD, Jr., FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Defendant James H. Gaddy appeals his sentence under the Sentencing Guidelines. He claims that the addition of two points to his base offense level for obstruction of

justice was not warranted. In addition, he argues that the district court's upward departure for possession of a gun was not supported by the facts and that the court unreasonably relied on pending charges to depart upward in his criminal history category. We affirm.

## I.

On May 19, 1989, Gaddy entered Americoin and Jewelry, a coin and jewelry store in Madison, Wisconsin. Identifying himself as Wayne Sterling, he gave the proprietor of the store a cashier's check for $4,200 for the purchase of ten gold coins. Two FBI agents were waiting for the defendant at the store. The agents had been alerted that someone using Wayne Sterling as an alias who matched the description of an individual wanted for bank fraud was in Madison attempting to purchase gold coins and a diamond. The agents arrested Gaddy after he presented the cashier's check to the proprietor.

After arresting Gaddy, the agents searched him and found four receipts from coin dealers in Illinois for the purchase of 33 gold coins. The receipts indicated that the 33 coins had been purchased with fraudulent cashier's checks between May 17 and 19, 1989, for a total price of $12,-823.50. The checks purported to be drawn on the same fictitious bank as the one presented to the proprietor at Americoin. The coins were recovered from the glove box of Gaddy's rental car during a consensual search after his arrest. The agents also found a loaded .387 caliber revolver tucked into Gaddy's pants.

When arrested, Gaddy identified himself as Christopher B. Fox, III. The agents found two wallets in Gaddy's possession containing identification with Gaddy's photograph but in the names of Michael Wayne Sterling, George Allen, and Christopher B. Fox. Gaddy told the arresting agents that he used several aliases, including those reflected in the identifications. He did not tell the agents that his real name was James H. Gaddy.

On May 20, 1989, FBI agents interviewed Gaddy at the Dane County Jail. The agents told Gaddy that they wanted information about his background. In response, Gaddy replied that he had never been arrested and that he had no fingerprints on file. He continued to identify himself as Christopher B. Fox.

On May 22, 1989, Gaddy asked to speak to one of the FBI agents who had arrested him. During that meeting, Gaddy informed the FBI for the first time that his real name was James H. Gaddy. A subsequent record check revealed that Gaddy was wanted in several states on both federal and state charges concerning financial crimes.

Gaddy was charged with the interstate transportation of 33 fraudulently obtained coins in violation of 18 U.S.C. § 2314. In addition, two counts of bank fraud pending against him in the Western District of Pennsylvania were transferred to the Western District of Wisconsin pursuant to Rule 20 of the Federal Rules of Criminal Procedure. Gaddy pleaded guilty to all charges.

The presentence report recommended, and the court agreed, that Gaddy should be assessed an additional two points for obstruction of justice pursuant to Guideline § 3C1.1 because he gave a false name and represented that he had never been arrested or had any fingerprints on file. The court also agreed with a recommendation for an upward departure pursuant to § 5K2.6 of the Guidelines based on possession of a firearm. Finally, the presentence report concluded that Gaddy's criminal history category of II underrepresented his criminal history. The government suggested an upward departure to category VI and the court agreed. Gaddy was sentenced to 52 months, followed by three years of supervised release, and was ordered to pay $6,002.57 in restitution. Gaddy appeals each of the above enhancements.

## II.

Our standard of review is well established. We review a district court's departure from the Guidelines' sentencing range to determine whether it was reason-

able in light of the district court's explanations for its departure at the time of sentencing. 18 U.S.C. §§ 3553(c), 3742(e)(3); *United States v. Williams*, 901 F.2d 1394, 1396 (7th Cir.1990). First we determine whether the court has adequately stated grounds that justify departure. This is a question of law and we apply a *de novo* review. *Id.* Second, we determine whether the facts that underlie the grounds for departure actually exist. *Id.* We accept the district court's factual findings unless they are clearly erroneous. *Id.* Finally, we review the degree of departure. The degree of departure must be linked to the structure of the Guidelines. *United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990). We give deference to the district court's findings on what degree of departure is appropriate so long as it adequately reflects the structure of the Guidelines. *United States v. Schmude*, 901 F.2d 555, 560 (7th Cir.1990).

### A. Obstruction of Justice

■ Gaddy contends that the two point increase for obstruction of justice was erroneous. Section 3C1.1, Willfully Obstructing or Impeding Proceedings, provides:

> If the defendant willfully impeded or obstructed or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

Gaddy received an increase because he gave a false name to the FBI agents and lied about his arrest and fingerprint record. Gaddy argues that because he recanted and gave his true name two days later that he did not obstruct justice. He claims that the false name had no impact on his investigation or prosecution and therefore, the increase was not warranted.

Gaddy's argument fails to recognize that Section 3C1.1 provides an increase for *attempts* to obstruct justice as well as actual obstruction of justice. There can be no doubt that Gaddy attempted to obstruct justice. He had much to gain by concealing his identity. He had jumped bail in California. A magistrate, not knowing his identity or that he had jumped bail, would very likely have set bail too low to account for the risk that Gaddy would jump bail again. Moreover, Gaddy was wanted on bank fraud charges in several states. Revealing his name would have allowed prosecution on those charges. Had Gaddy successfully concealed his identity, he would have substantially interfered with the administration of justice. He attempted to do so by lying about his name, and arrest and fingerprint records. He abandoned his attempt, but the district court was not clearly erroneous in finding that he had gone sufficiently forward to constitute an attempt.

We are not alone in our conclusion that a defendant's concealment of his identity at the outset of a criminal investigation merits an increase under § 3C1.1. In *United States v. Brett*, 872 F.2d 1365 (8th Cir. 1989), the Eighth Circuit upheld a similar finding where the defendant had given a false name to the authorities at the time of his arrest. In *United States v. Blackman*, 897 F.2d 309 (8th Cir.1989), the Eighth Circuit required a finding that the use of the alias was a material falsehood. As noted above, had Gaddy been successful, the falsehood would have been material. The enhancement for obstruction of justice was, therefore, not erroneous.

### B. Possession of a Gun

■ The district court departed upward for possession of a gun. Section 5K2.6 specifically allows for upward departure for the use or possession of a weapon in the commission of an offense. The court found that Gaddy possessed the gun during the commission of the offense and that it would depart upward by sentencing Gaddy as if two points were added to the offense level. It based its degree of departure on a comparison of the increase for possession of a weapon during a drug crime and a finding that the loaded .387 caliber revolver made Gaddy similarly dangerous.

Gaddy does not object to the reason for this departure or to its degree. He only claims the district court was clearly erroneous when it found that he possessed a weapon during the commission of the of-

fense. The offense charged was the interstate transportation from Illinois to Wisconsin of 33 gold coins which had been obtained by fraud. A gun was found on Gaddy in Wisconsin, but he claims the government did not produce evidence that he had the gun in Illinois. On this basis, Gaddy argues that the enhancement was not supported by the facts.

We do not agree. There is no dispute that Gaddy purchased some of the 33 gold coins in Rockford, Illinois on the day of his arrest in Wisconsin. After purchasing the coins, Gaddy left his car in Itasca, Illinois, a Chicago suburb, and drove a rental car to Madison where he was arrested that afternoon with a loaded revolver. Gaddy had little opportunity to obtain a gun during this time. In addition, that he carried a gun during the purchase in Madison and used the same modus operandi in Rockford as in Madison is evidence that he had a gun while crossing the state border. While this evidence might not prove beyond a reasonable doubt that he had the gun, it constitutes enough reliable evidence for us to conclude that the district court was not clearly erroneous in finding, for sentencing purposes, that Gaddy possessed a gun during the commission of the offense.

Moreover, the possession of the gun in Madison is part of the "background, character and conduct of the defendant" relevant under § 1B1.4 to a decision to depart. Guidelines § 1B1.4; *see United States v. Tetzlaff,* 896 F.2d 1071, 1073 (7th Cir.1990); *United States v. Jordan,* 890 F.2d 968, 975 (7th Cir.1989). The presence of a gun increased the danger to the FBI agents who arrested Gaddy and made his arrest more difficult. The possession of a weapon by a criminal who is wanted in several states and who has evinced an intention to avoid prosecution for past crimes creates a danger that may warrant departure. Even if Gaddy were correct that there was no reliable evidence that he possessed a gun while crossing a state line, departure was permissible.

### C. *Criminal History Category*

The original computation of Gaddy's criminal history score of 3 placed him in category II. The district court found, however, that the score did not sufficiently represent the extent of his criminal background and departed upward. The court added five points for seven burglary offenses to which Gaddy had pleaded guilty in Kern County, California, but for which he was not sentenced because he jumped bail. The court based its five point increase on its conclusion that Gaddy would have received the maximum six-year sentence for those offenses, since his less culpable co-defendant had been sentenced to imprisonment for nine years, and that the Kern County conviction and the charges in Wisconsin and Pennsylvania were closely related in time. The court also added one point to Gaddy's criminal history score for each of the five outstanding warrants for his arrest, finding that those warrants were based on prior similar conduct not resulting in convictions. The addition of those ten points resulted in a total criminal history score of 13, placing the defendant in category VI.

Gaddy makes two objections to these enhancements. He first argues that § 4A1.3(e) is invalid because he claims that the commentary conflicts with application note 6 for § 4A1.2. Specifically, the commentary to § 4A1.3(e) provides that a prior arrest record alone does not constitute reliable information for a departure under § 4A1.3. Application note 6 to § 4A1.2 states that reversed, vacated, or constitutionally invalid convictions should not be counted, while any conviction not otherwise counted may be considered for departure purposes "if it provides reliable evidence of past criminal activity." Gaddy argues that application note 6 is internally inconsistent because, on the one hand, it disallows the use of improperly obtained convictions while, on the other hand, it allows their use for departure. He also claims that § 4A1.3(e) conflicts with the application note but he does not explain how. He asks us to invalidate § 4A1.3(e) because the possible conflicting interpretations of the provision do not comply with the congressional directive that the Guidelines provide cer-

tainty and fairness in sentencing. 28 U.S.C. § 994(f).

In reviewing a challenge to an agency's construction of a statute, the agency's construction must be upheld if it is a "sufficiently reasonable" response to a congressional mandate. *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). Review of the relevant provisions show that they are clearly reasonable. Application note 6 begins by disallowing the use of invalid convictions for computation of the criminal history score. It then authorizes departures based on reliable evidence of past criminal activity, which we have approved. *See United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989). The combined meaning of these provisions is that invalid convictions may only be used during sentencing if there is reliable information of the defendant's guilt. Section 4A1.3(e) is thus entirely consistent with this provision because it simply requires more reliable information than a prior arrest record. There is, therefore, no inconsistency, uncertainty, or unfairness and these provisions of the Guidelines are sufficiently reasonable to comply with the congressional mandate.

 Gaddy's second objection to the upward departure is to the five point addition to his criminal history score for pending arrests. He claims that the warrant for a bank fraud that allegedly occurred March 20, 1987 does not provide reliable evidence that he is guilty of that crime. In addition, he argues that it is unfair to use the other warrants for sentencing because when he is convicted for those crimes, the future court will consider this sentence which was based on the allegations in those cases, creating a self-aggravating sentencing procedure.

With respect to the March 20, 1987 crime, Gaddy failed to object during sentencing to the factual basis of the warrant. The court specifically asked Gaddy whether he had any objections to the factual basis of the presentence report. Gaddy replied with an objection to the departure for bail jumping in Kern County, but not for the departure based on the March 20, 1987 warrant. The government argues that the warrant alone is reliable evidence because warrants do not issue without probable cause. It would be helpful, however, to have more information than this; Section 4A1.3 states that a prior arrest record itself shall not be grounds for an upward departure and, like warrants, the police cannot arrest without probable cause. Because there was no objection, the district court accepted without discussion the finding of the presentence report that there was reliable evidence that Gaddy engaged in this fraud. Without the discussion of the issue that would have occurred had it been raised in the district court, we cannot find the district court clearly erroneous.

Finally, we have previously implied that upward departure based on pending charges is allowed. *See United States v. Dillon*, 905 F.2d 1034, 1037 (7th Cir.1990); *Miller*, 874 F.2d at 469–70. The Guidelines permit consideration of prior similar adult criminal conduct not resulting in conviction, which covers pending charges. Gaddy cites no cases to the contrary and offers no legal basis (such as a citation to a provision of the Constitution or a statute) for invalidating this practice.

### III.

Gaddy's sentence is AFFIRMED.