**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James HOGAN, Defendant–Appellant.**

No. 94–1673.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1995.

Decided April 27, 1995.

Scott D. Levine, Asst. U.S. Atty., Jacqueline Ross (argued), Office of the U.S. Atty.,

Crim. Div., Chicago, IL, Barry Rand Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Jeffrey B. Steinback, Andrew M. Plunkett (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for defendant-appellant.

Before BAUER, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

James Hogan is an ex-sheriff who pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341. As Director of Personnel for the Cook County Sheriff's Office, Hogan manipulated the recruiting process for deputy sheriffs and corrections officers. In particular, he made sure that certain applicants received passing scores on entrance exams and falsified records indicating that other applicants had received their general education degrees. On appeal, Hogan complains of the district court's sentencing determinations. He first suggests that the district court erred in determining that he was an "organizer or leader" of a criminal scheme involving five or more participants. Second, he complains of both the basis and the extent of the district court's upward departure. We find the district court's sentencing determinations largely unobjectionable. We therefore affirm the enhancement for Hogan's leadership role and the basis for determining that Hogan's actions warranted an upward departure. The district court failed, however, to justify the extent of its upward departure. We therefore remand for findings in this regard.

## I.

James Hogan (Hogan) worked as Director of Personnel for the Cook County Sheriff's Office. As Director of Personnel, Hogan was in charge of hiring Cook County deputy sheriffs and corrections officers from the pool of applicants certified for hiring by the Cook County Sheriff's Merit Board. He ultimately used this position to engineer a fraudulent hiring scheme from early in 1987 until sometime in November of 1990.

The scheme largely involved manipulating and falsifying the qualifications of certain applicants for positions as Cook County corrections officers and deputy sheriffs. The Cook County Sheriff's Office can appoint only individuals who have been certified for the particular positions by the Cook County Sheriff's Merit Board. The Merit Board certifies applicants for positions based on a number of criteria—among these, the possession of a high school diploma or the equivalent and the passing of a written reading comprehension exam.

After Hogan became Director of Personnel for the Sheriff's Office he took a number of measures to ensure that certain favored applicants received positions as deputy sheriffs and corrections officers. In particular, he handed out stamped application forms to certain applicants at times when they were not available to the general public. He also made sure that certain applicants were given automatic passing scores on the required written entrance exams. And he had fictitious general education degree (GED) certificates placed in the files of other applicants.

Hogan acted in concert with others to accomplish this scheme. He apparently acted at the behest of an anonymous high level official. In addition, at least six others in the Sheriff's Department worked with him. Among these, only Jeffery Glass, the Assistant Director of the Cook County Sheriff's Merit Board, held a position of authority parallel to that of Hogan. The remainder of the individuals involved in the scheme were Hogan's subordinates and apparently acted pursuant to his orders. The government suggests that Glass, too, acted according to Hogan's orders. Apparently, when the high level official met with Hogan and Glass, the high level official told Glass that Glass should do whatever Hogan told him to do.

The record fails to indicate the precise number of unqualified individuals actually hired because of this scheme. Documentation does suggest, however, that at least 367 applicants for Deputy Sheriff and Corrections Officer positions were given a passing score on the entrance exam despite failing marks. In addition, at least 125 fictitious GED certificates were placed in the files of

designated applicants who did not possess the required educational credentials.

Hogan ultimately pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341 for these activities. The district judge sentenced him to twenty-four months in prison, followed by three years of supervised release. The court also ordered Hogan to perform three hundred hours of community service and to pay a fine of eighteen thousand dollars.

This sentence reflects a number of findings under the 1988 version of the Sentencing Guidelines. Finding that Hogan's base offense level was 6 under U.S.S.G. § 2F1.1(a) (Fraud and Deceit), the district court enhanced 2 levels pursuant to U.S.S.G. § 2F1.1(b)(2) for more than minimal planning and a scheme to defraud more than one victim. Because the total offense level was still less than 10, the district court then increased it to this level. U.S.S.G. § 2F1.1(b)(2). The district court then determined that Hogan was the organizer or leader of a criminal activity involving five or more participants and added a four-level enhancement. U.S.S.G. § 3B1.1(a). The court then reduced Hogan's offense level by two levels in light of his acceptance of responsibility. U.S.S.G. § 3E1.1.

These calculations gave Hogan an offense level of 12. Because he had no prior criminal record, he had a criminal history category of I. The district court believed that this offense level failed to adequately reflect the seriousness of Hogan's criminal conduct in light of the "multiplicity of offenses" that he had committed. The district court therefore departed upward four offense levels. To support its decision to depart, the district court cited numerous factors about the nature of Hogan's offense. Specifically, it believed that an upward departure was warranted in light of the sheer number of victims affected and the systemic nature of the scheme. Alternatively, it concluded that the public's loss of confidence in an important institution justified the upward departure.

## II.

Hogan appeals, essentially pointing to three claimed errors in the district court's sentencing determination. First, he suggests that the district court erred in determining that he was an organizer or a leader of a criminal activity. Second, he claims that the grounds for departure were not adequate. Third, he suggests that the extent of the departure was not reasonable. We believe that the district court's sentencing determinations are largely unobjectionable. Accordingly, we affirm in part. The district court failed, however, to justify the extent of its departure. We therefore remand for proceedings consistent with this opinion.

### A. Aggravating Role in the Offense

The district court determined that Hogan was an organizer or leader of a criminal activity involving five or more participants under U.S.S.G. § 3B1.1. Motivating the district court was its belief that Hogan was "among the most culpable" of the eight known participants. The district court found that he was in charge of the scheme and in fact directed the other perpetrators, and that "by reason of [his] conduct, several other people acting under [his] direction and authority have suffered the indignity of federal convictions." It therefore applied a four-level increase under U.S.S.G. § 3B1.1(a) for Hogan's aggravating role in the offense. Hogan disputes this determination on appeal.

We review sentencing determinations that a defendant played an aggravating role in the offense for clear error. *United States v. Donovan*, 24 F.3d 908, 918 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994); *United States v. Herrera*, 878 F.2d 997, 999–1000 (7th Cir.). This finding of fact is clearly erroneous only if, after viewing all the evidence, we are left "with the definite and firm conviction that a mistake has been committed." *United States v. Brown*, 900 F.2d 1098, 1102 (7th Cir.1990) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). In the present case, we do not disagree with the district court's conclusion.

The evidence amply supported the conclusion that Hogan was an organizer or leader of the criminal activity. Hogan both

organized the activity constituting the offense and helped recruit accomplices. He determined when certain favored applicants would receive the stamped application forms not otherwise available to the public. He designated applicants to whom his subordinates would assign passing scores. He indicated which applicants would receive the fictitious GED certificates. The anonymous high level official at whose behest Hogan claims to have conducted the scheme directed many of the other participants to follow Hogan's directions. As Director of Personnel for the Cook County Sheriff's Office, Hogan was literally *in charge* of many of the scheme's participants. It was from this post that he was able to engineer and accomplish the wrongdoing.

Hogan takes issue, however, with the district court's conclusion that he acted as an "organizer" or "leader" under § 3B1.1(a). He essentially claims that the highest finding the evidence will support is that of "manager" under § 3B1.1(b) (thus warranting a three-level increase instead of the four-level increase that Hogan received). The district court gave this lower enhancement to one of Hogan's codefendants, and Hogan claims to be no more responsible for the offense than this man.

■ The Application Notes delineate a nonexhaustive list of factors that a court should consider when determining whether a defendant qualifies as an organizer/leader, or merely as a manager of a given criminal activity:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3). *See also Herrera*, 878 F.2d at 1000. These factors are a means of assessing relative responsibility in an offense; no single factor is essential to determining whether an enhancement is warranted. *United States v. Fones*, 51 F.3d 663 (7th Cir.1995).

Keeping these factors in mind, we do not believe the four-level enhancement given to Hogan was inappropriate. The record indicates that Hogan basically directed the scheme, both designating the privileged applicants and informing his subordinates of the steps to be taken to ensure hiring. His position of authority at the Sheriff's Office enabled him to accomplish this task. It is not material that he acted at the behest of an anonymous high level official; the remainder of the scheme's participants did Hogan's bidding. There can, in any event, be more than one person who qualifies as a leader or organizer of a criminal activity. U.S.S.G. § 3B1.1, comment. (n. 3). *United States v. Billops*, 43 F.3d 281, 287 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995).

■ Neither is it material that one of Hogan's codefendants received a lesser enhancement than Hogan did. *Billops*, 43 F.3d at 287. Again we emphasize that the district court is in the best position to make the factual assessments necessary for sentencing determinations, including the assessment of relative fault incident to the sentencing of codefendants. *See United States v. Goines*, 988 F.2d 750, 777 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). The record in this case supports the district court's determination; Hogan was more involved in each aspect of the scheme than was his codefendant. Under these circumstances, Hogan does not stand to benefit from the nuances of the different aggravating roles set forth in § 3B1.1(a) and § 3B1.1(b). A disparity in sentences does not, in any event, itself supply a rationale that warrants resentencing. *See United States v. Stowe*, 989 F.2d 261, 264 (7th Cir. 1993).

The district court's determination that Hogan was the organizer or leader of the fraudulent hiring scheme was not clearly erroneous. Under the Guidelines, those who play an aggravating role in the offense are to receive sentences that reflect their greater contributions to the illegal scheme. The record suggests that Hogan played such an

aggravating role. Accordingly, we affirm the four-level increase applied under U.S.S.G. § 3B1.1(a).

## B. *The Upward Departure*

Hogan also complains about the district court's upward departure. The district court felt that Hogan's sentence failed to adequately reflect the seriousness of his criminal conduct and consequently determined that an upward departure was warranted. As grounds for the departure, the district court gave two reasons. First, it believed that a departure was warranted in light of the multiplicity of Hogan's offenses and victims and the systemic nature of his scheme. Alternatively, it found that the loss of public confidence in an institution as important as the Sheriff's Office was an appropriate ground for departure. The district court accordingly departed upward, ultimately finding a four-level enhancement reasonable under the circumstances.

 A sentencing court may depart from the Guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The determinations incident to a decision to depart upward are subject to varying standards of review. *United States v. Sarna*, 28 F.3d 657, 661 (7th Cir.1994). We subject the ground justifying departure, a question of law, to *de novo* review. *United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990). Factual findings of the circumstances underlying the ground for departure, on the other hand, will not be disturbed unless they are clearly erroneous. *Id.* Finally, we review the extent of the departure. We will uphold the extent of the departure taken as long as it is reasonable and adequately reflects the structure of the Guidelines. *Id. See also United States v. Ferra*, 900 F.2d 1057, 1062 (7th Cir.1990), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).

 Here, the district court found that alternative factors warranted an upward departure. Either the multiplicity of the offenses and victims or the loss of confidence in a public institution, in the district court's

view, justified a higher sentence. Hogan primarily argues that the district court departed on the basis of considerations already taken into account in the calculation of his offense level. *See, e.g., United States v. Boula*, 932 F.2d 651, 656 (7th Cir.1991). We find, however, that the district court's focus on the loss of public confidence in an important institution was sufficient to justify an upward departure.

Loss of confidence in an important institution is a factor the Guidelines expressly designate as an appropriate ground for an upward departure. U.S.S.G. § 2F1.1, comment. (n. 9). The fraud provisions generally tie offense level to the amount of money involved in the fraudulent conduct. U.S.S.G. § 2F1.1. Consequently, an upward departure may often be appropriate in circumstances where "[d]ollar loss does not fully capture the harmfulness and seriousness of the conduct." *Id.*, comment. (n. 9). In particular, an upward departure may be warranted where "the offense caused a loss of confidence in an important institution." *Id.*

As much clearly happened here. Hogan did not simply cheat the public out of a specific dollar value. Had he, the case would have fit much more easily into the paradigm that the fraud provisions set forth—essentially tying increases in offense level to monetary loss. Hogan's cheating instead resulted in harm that is quite hard to quantify. In a very real sense, he committed a fraud upon the public. His actions distorted the applications process, creating a system that was both unfair to good faith applicants and to the public at large. By doing so, he staffed the Sheriff's and Corrections Offices with applicants unqualified for the positions they received. These men and women would be beholden to Hogan, ultimately placing him and the demands of cronyism above any duty to the public.

The "loss of confidence" that these actions engendered thus occurred on a number of different levels. Largely because of Hogan's actions, the public has reason to suspect Cook County's hiring processes. Questionable hiring criteria translate into a tainted workforce; the unqualified hires give the

public reason to doubt the abilities of many of the officers working for Cook County. This system of political favoritism finally gives the public reason to suspect the officers' loyalty. This "loss of confidence" is a disservice not only to the public, but also to the honest men and women who serve the public as officers in Cook County.

These considerations were not otherwise taken into account by the fraud provisions; they were therefore an appropriate basis for departure. Hogan argues that the district court considered these factors when it increased his offense level from 6 to 10 under U.S.S.G. § 2F1.1(b)(2) of the 1988 Guidelines. But that provision fails to consider the manner in which certain types of fraud occasion a loss of public confidence. We therefore believe that the district court fastened upon confidence loss as an appropriate basis for an upward departure.

■ Approving of the district court's basis for departing does not end our inquiry. Hogan also contests the *extent* of that departure. The district court determined that a four-level increase was "reasonable." It failed, however, to explain precisely why this case merited the addition of these four levels. This failure runs afoul of the principle that a district court must "link the extent of departure to the structure of the guidelines." *Ferra*, 900 F.2d at 1062; *see also Sarna*, 28 F.3d at 662.

Accordingly, on remand, the district court should explain why it believed that a four-level departure (or some alternative departure) was appropriate. "In departing the judge should compare the seriousness of the aggravating factors at hand with those the Commission considered." *Id. See also Boula*, 932 F.2d at 657; *Gaddy*, 909 F.2d at 199. Following this procedure ensures that any later challenge to the extent of departure is reviewed deferentially, and will be upheld if reasonable. *See Gaddy*, 909 F.2d at 199. But the district court needs to discuss why it believed that the extent of the departure taken ought to have been four levels.

The command to "link the extent" of the departure to the structure of the Guidelines envisions the use of analogy to factors existing in the Guidelines. We note that the

district court is free, in making this finding, to consider later versions of the Guidelines to supply the appropriate analogy. *See United States v. Boula*, 997 F.2d 263, 267 (7th Cir. 1993). Contrary to the government's suggestion, however, this freedom does not itself justify the four-level departure that the district court took here; the district court specifically stated that it was *not* looking at later versions of the Guidelines in calculating the upward departure. Some explanation is therefore necessary on remand. The district court must provide a record defense of its determination that the extent of the departure ought to have been four levels.

### III.

The district court correctly concluded that Hogan was an organizer or leader of a criminal activity involving numerous participants. It also properly departed in light of the loss in public confidence caused by Hogan's actions. It failed, however, to justify the extent of the departure taken. For these reasons the district court's judgment is AFFIRMED in part and VACATED and REMANDED in part.