**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 93-5975

KARLO ANTONI STEWART,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert F. Murray, Senior District Judge.
(CR-92-413-HM)

Argued: December 8, 1995

Decided: January 12, 1996

Before RUSSELL and HALL, Circuit Judges, and THORNBURG,
United States District Judge for the Western District
of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Donald Douglas Hecht, Baltimore, Maryland, for Appel-
lant. Ira Lee Oring, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Karlo A. Stewart was convicted following a jury trial of interstate transportation of stolen property, 18 U.S.C. § 2314, and was sentenced to 30 months' imprisonment. He appeals his sentence, claiming that the district court erred in departing upward because he committed similar criminal acts while on pretrial release. He also complains that the district court erred in increasing his offense level based on a finding that he used a "special skill" in committing the check forgeries. We affirm.

I

Stewart stole a number of checks from Dental Benefit Providers, Inc. (DBP), Bethesda, Maryland, where he worked as an accounts payable clerk between May, 1990, and January, 1991. He made the checks out to himself and endorsed them using either a signature stamp or a forged signature. Some of the checks were cashed, and three were deposited in Stewart's bank account in Washington, D.C. DBP lost in excess of $40,000.

Stewart quit his job at DBP before his thefts were discovered, and he obtained another position as an accounts payable clerk with Washington Consulting Group (WCG). He continued to work at WCG after being charged in the instant offense on November 5, 1992. He was terminated by WCG on May 3, 1993, for forging its checks.

At the December 13, 1993, sentencing hearing, the government produced evidence that Stewart stole $40,227 from DBP and $16,265 from WCG. The court agreed with the government that Stewart's commission of the WCG thefts while on pretrial release warranted an upward departure, and two offense levels were added. The total offense level of 17, combined with a criminal history score of III,

2

yielded a sentencing range of 30-37 months.**1** The district court sentenced at the bottom of this range.

II

Stewart's first assignment of error involves the upward departure based on the WCG thefts. He argues that the sentencing guidelines do not permit departures for such conduct and, alternatively, even if such a departure were allowable in this case, the district court's failure to cite the specific reason for its decision to depart forecloses appellate review and requires a remand for resentencing. We find no merit in either of Stewart's arguments.

A

Departures are reviewed under the four-part "test of reasonableness" established in United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 499 U.S. 970 (1991). Our inquiry in this case focuses on the first part of the test, which calls for de novo review of the district court's reasons for its departure decision "to ascertain whether those reasons encompass factors`not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Id. (quoting 18 U.S.C. 3553(b)).**2** The Commission has indicated, however, that departures may be warranted on the basis of the type of conduct involved here.

_____

**1** The guideline calculation began with a base offense of 4, and 7 levels were added for loss of more than $40,000. U.S.S.G.§ 2B1.2(a)-(b) (Nov. 1993). The district court added two offense levels for use of a "special skill" in committing the DBP forgeries (§ 3B1.3), and two additional levels for "more than minimal planning" (§ 2B1.2(b)(5)(A)).

**2** The second part of the Hummer test involves review for clear error of the district court's factual basis for the departure, and the final two parts call for application of an abuse of discretion standard to the district court's decision to depart at all and to the extent of the departure. Stewart does not contend that there was insufficient evidence of the WCG thefts. He also does not raise any issues with regard to the latter two parts of the test.

Stewart had only been released from prison in 1990 after serving a sentence for precisely the same type of offense involved here. Although this prior sentence, as well as the fact that Stewart was on probation when he committed the DBP thefts, were factored into the criminal history calculation,[3] there is no provision in the Guidelines that would specifically account for the WCG thefts. However, U.S.S.G. § 4A1.3(e), p.s., permits the court to depart in situations where "reliable information indicates that the criminal history category does not reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . ." Stewart's commission of the WCG thefts, while he was still on parole from a 1989 forgery conviction and on pretrial release on the DBP charges, certainly indicates a likelihood of future similar conduct, and § 4A1.3 is broad enough to authorize the departure under the circumstances of the instant case. See United States v. Morse, 983 F.2d 851, 854-55 (8th Cir. 1993) (pending charges in conjunction with other factors justified departure); see also United States v. Gaddy, 909 F.2d 196, 201 (7th Cir. 1990) (same). We hold, then, that a departure was warranted. We turn to whether the district court's decision to depart is amenable to appellate review.

B

Under Hummer, we review the district court's "specific reasons cited by the district court in support of its sentence outside the Guidelines range . . . . " 916 F.2d at 192. Although the district court did not cite a specific section of the Guidelines, it is abundantly clear that the concerns represented by § 4A1.3(e) are the same concerns that animated the departure decision here. The probation officer's discussion of a possible departure and the government's arguments at the sentencing hearing focused not only on the extent and seriousness of the continuing criminal conduct, but also on the fact that such conduct had not been accounted for anywhere in the calculation of Stewart's sentencing range.[4] The district court obviously agreed with the gov-

_____

[3] See U.S.S.G. § 4A1.1(d).

[4] Had the district court explicitly departed pursuant to § 4A1.3, the departure should have been made by increasing Stewart's criminal history category from III to IV, instead of by increasing his offense level from 15 to 17. See United States v. Rusher, 966 F.2d 868, 884 (4th Cir.), cert. denied, 113 S. Ct. 351 (1992). However, the guideline range would be 30-37 months in either case.

4

ernment that Stewart's thefts from WCG was conduct not adequately taken into account under the Guidelines, and we reject Stewart's argument that the district court's failure to specifically cite chapter and verse precludes review of the departure under <u>Hummer</u>.

III

Having affirmed the upward departure, we need not review the propriety of the district court's adjustment for use of a special skill, because the district court found that it would impose a sentence of 30 months whether the sentencing range were 30-37 months (with the two levels added for special skills) or 24-30 months (without the two-level enhancement). <u>See United States v. Willard</u>, 909 F.2d 780, 782-83 (4th Cir. 1990); <u>United States v. White</u>, 875 F.2d 427, 432-33 (4th Cir. 1989) (appellate review unnecessary when same sentence would be imposed regardless of which guideline range applies). We therefore affirm the sentence imposed.

<u>AFFIRMED</u>

5