**UNITED STATES of America,**

v.

**William AYERS.**

**No. 95 CR 131.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 18, 1997.

Kenyatta Latricia Tatum, Fed. Def. Program, Chicago, IL, for defendant.

Jonathan C. Bunge, U.S. Atty's Office, Chicago, IL, for U.S.

**1202**

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

In a Memorandum Opinion and Order dated May 30, 1997, 971 F.Supp. 1197, the court granted the motion of Defendant William Ayers for a downward departure in his sentence. The court found that as a child Ayers suffered not only extreme physical and sexual abuse but also exceptionally cruel psychological and emotional abuse, which the court characterized as a form of sadistic torture. The court also found that the extraordinary abuse Ayers suffered as a child contributed in a significant way to his subsequent criminal behavior. Having decided to depart downward on these grounds, the court now considers how far downward the court should depart.

Generally speaking, the extent of a departure from the Guidelines should be reasonable and should adequately reflect the structure of the Guidelines. *United States v. Hogan*, 54 F.3d 336, 341 (7th Cir.1995) (citations omitted). The Seventh Circuit has recognized that

> by their very nature, departures involve considerations that the guidelines do not already take into account. To say that the sentencing court must link the degree of departure to the guidelines means not that the court must employ existing guideline provisions to determine the appropriate degree of departure, but that it must employ the rationale and methodology of the guidelines when considering cases not adequately addressed by existing guidelines. The sentencing judge is thus required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence.

*United States v. Senn*, 102 F.3d 327, 331–32 (7th Cir.1996) (citation omitted).

At Ayers' sentencing on May 30, 1997, the court asked defense counsel and the government to recommend an appropriate departure in this case, noting that the court was thinking in terms of a two- or three-level departure from the guidelines. (Tr. at 2.) [1] In response, defense counsel asked the court to

> depart four levels mainly because the guidelines usually work in two-level increments; for instance, like acceptance of responsibility, abuse of trust, mitigating role. And two increments of two levels is four. And we believe that would be an appropriate departure which would also link the departure to the guidelines.

(Tr. at 3.) Suggesting an alternative way to link the departure to the guidelines structure, the government then stated:

> The idea I had, Your Honor, was that if the point of the departure is that Mr. Ayers shouldn't be treated as a career offender, what you could do is sentence him under the guidelines as they would apply if the career offender provision didn't kick in, and the end result ... would be even lower than the level that you've been talking about. He would be a level 21, category 6, [or] 77 to 96 months [in prison]. Under the circumstances, we'd recommend the high end of that range, which would be a 96–month sentence.... And that would be the guideline calculation if the career offender guideline didn't bring him up to a level 29 offense level.

(Tr. at 4–5.) [2] Defense counsel endorsed this approach, stating that

> this departure addresses [Ayers'] extreme psychological problems, and the extreme psychological problems were happening when those other offenses occurred.... Therefore, you're not ignoring the fact that he had prior criminal history. However,

---

1. "Tr." stands for the transcript of proceedings before this court in this case on May 30, 1997.

2. Clarifying it's position on the court's downward departure in this case, the government reserved the right to appeal the court's initial decision to depart downward—a decision the government consistently opposed. The government now argues that, having decided to depart downward over objection, the court should calculate the amount of the departure by setting aside the career offender provision and sentencing Ayers to the upper end of the resulting guidelines range. (Tr. at 5–6.)

you are not jumping him all the way to the career offender guideline.

(Tr. at 6–7.)

The court agrees with the government and defense counsel that the most appropriate departure in this case is one that treats Ayers as if he were not a career offender. The extraordinary abuse that Ayers suffered as a child did not directly cause him to rob a bank in Chicago on February 27, 1995. However, the abuse did contribute in a significant way to the criminal behavior that has landed Ayers in Criminal History Category VI and qualified him as a career offender. Therefore, the best way to link the departure in this case to the structure of the guidelines is not to minimize the seriousness of Ayers' present crime but to recognize the extent to which Ayers' tragic childhood contributed to his past criminal behavior. Under this approach, Ayers remains in a Criminal History Category of VI, but his offense level drops from 29 to 21, producing a guidelines range of 77 to 96 months in prison.

### Conclusion

For reasons set forth above, Ayers has a criminal History Category of VI and an offense level of 21, producing a guidelines range of 77 to 96 months in prison.