**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Jessie KINCAID, Defendant–Appellee.**

**No. 91–1547.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1992.

Decided Feb. 10, 1992 *.

Christopher P. Yates (argued and briefed), Detroit, Mich., for plaintiff-appellant.

David I. Goldstein (argued and briefed), Ann Arbor, Mich., for defendant-appellee.

Before KENNEDY and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.

PER CURIAM.

The United States appeals the District Court's downward departure from the Federal Sentencing Guidelines in the sentence of Jessie Kincaid following a guilty plea of a charge to bond jumping. The United States asserts that the District Court erred in declaring the enhancement scheme of

---

* This decision was originally issued as an "unpublished decision" filed on February 10, 1992. On March 5, 1992, the court designated the opinion as one recommended for full-text publication.

the United States Sentencing Guideline (U.S.S.G.), section 2J1.6, arbitrary and capricious. For the reasons stated below, we REVERSE the decision of the District Court, vacate the judgment and REMAND for resentencing.

### I.

Defendant Kincaid was tried and convicted of possession with intent to distribute cocaine. Kincaid, released on bond while under indictment and during the pendency of the trial, failed to appear for sentencing on January 19, 1990. The District Court revoked Kincaid's bond and issued a warrant for his arrest. The United States Marshals Service apprehended Kincaid in October 1990. He was subsequently sentenced to a 70–month term for the drug offense.

On January 8, 1991, Kincaid was charged with a single count of knowingly failing to appear for sentencing in violation of 18 U.S.C. § 3146(a)(1). Kincaid pled guilty to the charge in exchange for a cap of 24 months on the potential sentence of and a two-level reduction in his sentencing guideline offense level for acceptance of responsibility. At the sentencing hearing on April 4, 1991, the parties and the District Court agreed that the presentence report correctly set the sentencing guideline range at 18 to 24 months.[1] The district judge, departed downward from the offense level of 13 to an offense level of six. During the sentencing hearing, the district judge commented that sentencing guidelines as they were applied in the case of bond jumping were arbitrary and capricious and offered the opportunity for downward departure. The district judge also suggested that the defendant's psychological stress at the time of sentencing on the cocaine charges may serve as a further basis for the downward departure. The judgment and commitment order, dated the day of the sentencing hearing, states only that the district judge chose to downward depart from the sentence recommended in the presentence report because "the addition of 9 levels was not rationally related to the circumstances of defendant's failure to report and guideline range of punishment for the offense for which he was to be sentenced."

Kincaid was sentenced to a six-month term on the bond jumping charge to be served consecutive to the sentence for the cocaine charge. The government filed its notice of appeal on May 3, 1991. On July 19, 1991, the district judge filed a memorandum explaining the reasons for his downward departure.

### II.

This Court, in *United States v. Fitzwater*, 896 F.2d 1009, 1012 (6th Cir.1990), held that the justification for sentencing departures must be given at the time of sentencing. In *Fitzwater*, the District Court filed an "Order Exceeding Sentencing Guidelines" outlining the reasons for the sentencing departures. This order was filed four weeks after the notice of appeal had been filed in the case. This Court held that the District Court had lost jurisdiction at this time and stated:

> The requirement in 18 U.S.C. § 3553(c) that "[t]he court, *at the time of sentencing*, shall state in *open court* ... the specific reason for imposition of a sentence different from that described" (emphasis added) ensures that a defendant at the time of sentencing will know the grounds for an upward departure and can take them into account in his decision on whether or not to appeal his sentence.... In the present case the belated attempt of the district court to correct its failure to provide a specific statement at the sentencing hearing does not suffice.

*Id.* at 1012. We extend this holding to cases involving downward departures and find that the District Court's statements filed subsequent to the sentencing hearing and notice of appeals cannot be considered when determining the reasons for the District Court's downward departure.

---

1. The guideline range of 18 to 24 months reflects an offense level, adjusted for acceptance of responsibility, of 13 and a criminal history category of III.

## III.

■ We review the District Court's application of the sentencing guidelines *de novo*.[2] *United States v. Wilson*, 920 F.2d 1290, 1294 (6th Cir.1990). The question the defendant submits for review in this case is whether the District Court erred in declaring the enhancement scheme of the U.S.S.G., § 2J1.6, arbitrary and capricious. This Court must determine whether the enhancement scheme of U.S.S.G. § 2J1.6 is reasonable in light of the sentencing statutes. *See Federal Election Comm'n v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981); *United States v. Agbai*, 930 F.2d 1447, 1448–1449 (10th Cir.1991). This review involves the determination of whether the guideline is "sufficiently reasonable" in light of congressional directions to the Sentencing Guideline Commission. *United States v. Nelson*, 919 F.2d 1381, 1382 (9th Cir.1990) (citing *United States v. Lee*, 887 F.2d 888, 890 (8th Cir.1989)).

In order to determine whether the United States Sentencing Commission's application of statutory directives is arbitrary or capricious we must review the relationship between the intent of Congress in directing sentencing courts and the enhancement scheme of U.S.S.G. § 2J1.6. Sentencing courts are directed to consider, among other things, the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

18 U.S.C. § 3553(a). The Sentencing Commission is designed to assure that the purpose of sentencing as established by sec-

tion 3553 is met, provide "certainty and fairness" in sentencing, and avoid discrepancies in the sentencing process. 28 U.S.C. § 991(b)(1)(B) (1988). The sentencing structure for bond jumping matches the severity of the punishment with the severity of the underlying crime. Clearly, this reflects the Commission's recognition that those defendants facing a longer potential jail term need a greater deterrent from bond jumping. The relationship between the two sentences also ensures that the bond-jumping sentence accurately and consistently reflects the seriousness of failing to appear for sentencing or trial for severe crimes.

Three other federal circuit courts have addressed downward departures in cases similar to the one at issue. In *Nelson*, the Ninth Circuit found that the Sentencing Commission's choice of enhancement scheme, set out in U.S.S.G. § 2J1.6, for persons found guilty of bond jumping was reasonably related to that purpose of the sentencing statutes. The defendant in *Nelson* failed to appear for motions to suppress and a status conference in connection with his indictment on drug charges. Although a motion for judgment of acquittal was later granted on the drug charges, his sentencing guideline offense level for bond jumping was calculated based on the 20–year maximum term of imprisonment associated with the drug offense. The Ninth Circuit upheld the bond jumping sentence stating:

> The failure to appear to answer more serious crimes could be seen as a greater offense than when one is initially charged with less serious crimes. One facing a potentially longer prison term has more of an incentive to flee, and thus a longer sentence could be seen as necessary to deter him. The deterrent effect is one of the purposes of sentencing that the Commission and sentencing court are to consider.
>
> . . . .

---

2. 18 U.S.C.A. § 3742 establishes that appellate courts reviewing sentences under the guidelines "shall accept the findings of fact of the district court unless they are clearly erroneous." Thus, we review questions of fact and law under different standards in this case.

Finally, § 2J1.6 can be said to reflect the Commission's proper consideration of "the community view of the gravity of the offense" and "the public concern generated by the offense." 28 U.S.C. § 994(c)(4), (5) (1988).

*Nelson*, 919 F.2d at 1384. The Tenth and D.C. Circuits have adopted the rationale of *Nelson*. *United States v. Agbai*, 930 F.2d 1447 (10th Cir.1991); *United States v. Williams*, 932 F.2d 1515 (D.C.Cir.1991).

The *Nelson* court distinguished an Eighth Circuit case, *United States v. Lee*, 887 F.2d 888 (8th Cir.1989), where the defendant knew his sentence at the time he jumped bond. The Eighth Circuit in *Lee* held that U.S.S.G. § 2J1.6 was invalid where it called for a bond jumping sentence to be imposed on the basis of a maximum sentence for the underlying offense where the actual sentence had been imposed and was only a fraction of the maximum. Defendant Sharon Kay Lee had been charged with and pled guilty to one charge of distributing methamphetamine. She was sentenced to eighteen months but failed to report to serve her sentence. The *Lee* court noted the difference between "failing to report for trial or sentencing, when a real possibility exists that the maximum sentence will be imposed, and failing to report for service ... where the sentence to be served is but a fraction of the maximum." *Id.* at 892. United States Sentencing Guidelines, section 2J1.6 has been amended to provide a separate base offense level and separate enhancement scheme for "failure to report for service of sentence."

The potential maximum penalty Kincaid faced for his drug conviction was 15 years. Kincaid asserts that the application of U.S.S.G. § 2J1.6 is arbitrary and capricious because at the time he failed to appear at sentencing he was no longer facing a maximum penalty of 15 years. Kincaid bases this assertion on the fact that the guideline range could be calculated and the sentence imposed under the guidelines would have been 60 to 70 months. Kincaid therefore urges this Court to consider his case under the rationale of *Lee*.

■ We reject this argument and find that the sentencing guideline imposed was neither arbitrary nor capricious in failing to take into consideration the probable guideline sentence. As stated by the D.C. Circuit in *Williams*,

> [w]hen [the defendant] failed to appear, he committed a crime; and the penalty imposed by the Guidelines for that crime will reflect the severity of the punishment that he faced if convicted as charged. Otherwise, the penalty for failure to appear will not provide an accused with sufficient incentive to face the judicial music.

932 F.2d at 1516–17. The fact that Kincaid could calculate a probable sentence based on the sentencing guidelines does not require changing the sentencing outcome under section 2J1.6. The sentencing judge had not yet adopted the sentence as calculated in the presentence report and could have departed from that sentence for a variety of reasons. The guidelines as written are a reasonable deterrent to bond jumping. If mere calculation of an expected sentence was sufficient to avoid the application of the sentencing guidelines, section 2J1.6 would be ineffective. In view of the uncertainty of what the sentence will be until the sentence is imposed, it is neither arbitrary nor capricious that the bond-jumping sentence reflect the severity of the crime for which the defendant was being held. We express no opinion as to whether the sentencing commission has taken into account the case in which the probation officer has calculated the sentence and whether there is a basis for departure.

## IV.

■ The factual findings of the district court must be sufficiently specific for the appellate court to meaningfully review the sentence under section 3742(e) of the Sentence Reform Act. *Fitzwater*, 896 F.2d at 1011. Section 3742(e) allows the appellate court to set aside a sentence if it departs unreasonably from the guidelines. When a district court departs from the guidelines " 'a short clear written statement or a reasoned statement from the bench' must support the departure." *Id.* at 1011 (quoting *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989), *cert. denied*, 493 U.S.

1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990)). This complies with the requirement under 18 U.S.C. § 3553(c)(2) that the "specific reasons for the imposition of a sentence different from that described in the guidelines" be stated. The bench ruling of the District Court suggests that the downward departure is based at least in part on the defendant's psychological stress at the time he failed to return for sentencing.[3] We do not find that the statement by the district judge relating to the defendant's psychological condition is sufficient to permit meaningful review. Since no specific finding was made, downward departure under the guideline on that basis is not permitted. *Fitzwater,* 896 F.2d at 1011; *United States v. Michel,* 876 F.2d 784, 786 (9th Cir.1989).

## V.

Because the District Court departed from the sentencing range established by the guidelines without specific findings or legal basis, the District Court judgment is vacated and the case is REMANDED to the District Court for resentencing.

---

**3.** The district judge stated at the sentencing hearing:

I propose to depart for reasons stated above [arbitrary and capricious nature of the Sentencing Guideline § 2J1.6] and for further reasons the offender characteristics for this person is reflected in the Pre-Sentence Report seem to be unique assuming generics appear that the Sentencing Commission failed to take into account the possibility of severe psychological stress on a reporting day for our Defendant who got wrapped into a conspiracy in the fashion that this Defendant did and was treated in the fashion that this Defendant was treated by the system.