**UNITED STATES of America**

v.

**James Joseph SARNA.**

**No. SCr. 91–38M.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 1, 1993.

William T. Grimmer, Asst. U.S. Atty., South Bend, IN, for U.S.

Martin W. Kus, LaPorte, IN, for James Joseph Sarna.

## SENTENCING MEMORANDUM

MILLER, District Judge.

On January 23, 1990, after having tendered a guilty plea to a counterfeiting charge that carried a fifteen-year maximum sentence pursuant to a written plea agreement that capped the possible sentence at ten years, James Sarna failed to appear for sentencing. This charge of failure to appear, 18 U.S.C. § 3146(a)(1), ensued. Mr. Sarna was apprehended in April 1993. He was sentenced on the counterfeiting charge to 87 months imprisonment, the top of the applicable sentencing range, despite the government's recommendation for a mid-range sentence.

Mr. Sarna now comes before the court for sentencing on the failure to appear charge, to which he has pleaded guilty. The government had no objection to the presentence report. Mr. Sarna had three objections, which are discussed separately below. The court employs the November 1, 1992 version of the Sentencing Guidelines.

### A.

First, Mr. Sarna objects to imposition of any sentence based on *United States v. Lechuga,* 975 F.2d 397 (7th Cir.1992), which holds that because failure to appear offenses are to be grouped with the underlying offense pursuant to U.S.S.G. § 3D1.2(c), the court cannot impose a sentence outside the hypothetical guideline range for both even if the cases are handled separately, unless grounds for departure exist. 975 F.2d at 401. Other courts agree. *United States v. Agoro,* 996 F.2d 1288 (1st Cir.1993); *United States v. Lacey,* 969 F.2d 926 (10th Cir.1992), *vacated on other grounds,* — U.S. —, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). Applica-

tion note 6 to U.S.S.G. § 3C1.1 looks in the other direction, and speaks more directly to the point: "Where the defendant is convicted both of the obstruction offense [including Failure to Appear by Defendant] and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense.... The offense level for that group of closely-related counts will be the offense level for the underlying offense increased by the 2–level adjustment specified for this section, or the offense level for the obstruction offense, whichever is greater." The court must follow the Guidelines' commentary unless there is a conflict with a guideline or with a statute. *Stinson v. United States,* — U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).[1]

### 1.

■ Thus, because Mr. Sarna already has received the maximum sentence within his range for the counterfeiting offense, the court cannot impose an additional sentence unless grounds exist to depart. Grounds for departure exist here.

Mr. Sarna objected to, and then moved to strike, the evidence presented at the sentencing hearing in support of the government's departure motion. The court overrules the motion to strike. Mr. Sarna argues that because the court already has "grouped" the offenses, the evidence is unnecessary. The court disagrees for two reasons. First, the court did not sentence Mr. Sarna in the earlier case on the basis of the failure to appear; nor, for that matter, did the court sentence Mr. Sarna in the earlier case on the basis of the conduct in which he is said to have engaged in flight. Second, the "grouping" provisions of Part 3D of the Sentencing Guidelines simply establish the offense level to be used in determining the sentencing range from which any departure is to be

considered. Departure cannot be determined in a vacuum; facts that otherwise would warrant departure need not be addressed if the court deems the sentencing range to provide a sentence sufficient to satisfy the purposes of 18 U.S.C. § 3553.

### a.

The court does not believe that departure is appropriate under U.S.S.G. § 4A1.3, as suggested by the presentence report and by the government's secondary argument. The court agrees with Mr. Sarna's objection to that portion of the presentence report. Mr. Sarna has two prior counterfeiting convictions, but the second cannot be considered in determining whether to depart from what amounts to the sentence for the second. U.S.S.G. § 2J1.6, Application Note 4. The first conviction was considered in determining his initial sentencing range. Mr. Sarna's criminal history does not include any prior failures to appear; hence, for purposes of determining whether to depart upward with respect to the sentence for failure to appear, the court cannot say that his criminal history category seriously under-represents the seriousness of his criminal history.

If the court is to re-open the sentencing process on the counterfeiting charge, the government may be correct that departure under U.S.S.G. § 4A1.3 is appropriate: as discussed below, Mr. Sarna was on his way to becoming a three-time offender, and was sentenced only as a second offender. Nonetheless, because departure is appropriate based on Mr. Sarna's overall conduct in furtherance of his failure to appear (including, but not limited to the anticipated 1993 counterfeiting), the court declines to depart under U.S.S.G. § 4A1.3.

---

1. One may question the wisdom of this effect of the Guidelines. Failure to appear involves a harm quite different from most underlying offenses. Here, the underlying counterfeiting offense involves a threat both to the integrity of United States currency and to persons who receive the bills, while the failure to appear attacks the integrity of the criminal justice system. Thus, it seems that a failure to appear offense should not be "grouped" with an underlying counterfeit charge because they do not involve substantially the same harm, but U.S.S.G. § 3D1.2(c) requires grouping because flight might warrant an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. If failure to appear is "grouped" with a more serious offense, and the defendant already has engaged in conduct that would amount to obstruction of justice within the meaning of U.S.S.G. § 3C1.1, post-arrest flight to avoid prosecution is a crime without cost.

### b.

■ When one looks solely at the failure to appear, one must conclude that this is not a typical case representative of the "heartland" carved out by the Sentencing Guidelines. *See* U.S.S.G. Introduction, at 5 (policy statement: "The Guidelines' Resolution of Major Issues: Departures"). Mr. Sarna did more than simply fail to appear for his sentencing:

First, he did not simply fail to appear in the courtroom; he fled the court's jurisdiction, abandoning his wife in the process.

Second, he travelled and worked under assumed names, even acquiring an Indiana driver's license in the name of Thomas Hollander. This goes well beyond a simple failure to appear.

Third, he led authorities on a three-year hunt that eventually led to his apprehension in Missouri. This goes well beyond a simple failure to appear exceeding ninety-six hours. *Cf.* U.S.S.G. § 2J1.6(b)(1)(A).

Fourth, he married his new wife Kristin under the name of Matthew J. Hollbrook. She believed he was Thomas Hollander. She did not learn of his true identity until his arrest. The "abuse of private trust" provision of § 3B1.3 would not appear to encompass this.

Fifth, in the months immediately preceding his arrest in Missouri, Mr. Sarna and his eventual wife purchased dark room photography equipment and a printing press. Mr. Sarna strenuously denies that the equipment was to be used for counterfeiting, maintaining instead that it was to be used for his wife's anticipated photography and silk screen businesses. The court simply cannot find that explanation credible, for several reasons:

—Mr. Sarna's story provides only a feeble explanation for the photographic negatives of U.S. currency found with the equipment in Mr. Sarna's residence. Mr. Sarna says that he copied those bills to test the equipment for clarity and resolution. Such an explanation might be credible if one bill was photographed, but leaves the court unsatisfied as to why Mr. Sarna or his wife photographed a $100 bill, a $50 bill, and a $20 bill.

—Mr. Sarna's story provides no explanation whatsoever as to why Mr. Sarna and his wife purchased the equipment under the aliases of Bill and Sarah Stevens, in one instance representing themselves to be father and daughter.

—Mr. Sarna's story provides no explanation whatsoever as to why Mr. Sarna and his wife opened a post office box to provide an address for "Cameo Photography" under still another false name drawn from identification found in a lost wallet.

—Mr. Sarna's story does not explain why the windows of the garage containing the printing press were covered with black plastic.

Perhaps this conduct is, as suggested by the defense, consistent with being a fugitive from justice who did not want to be discovered. But that, in turn, is inconsistent with Mr. Sarna's wife—who shared the use of the false names when dealing with suppliers—not knowing that Mr. Sarna was a fugitive.

Against Mr. Sarna's improbable explanation runs the inference that Mr. Sarna, a twice-convicted counterfeiter, was using the equipment to get another counterfeiting business started. *See* Fed.R.Evid. 404(b). In light of the equipment acquired and the clandestine methods used to acquire the equipment, the court finds this inference to be far more probable.

This finding that Mr. Sarna was re-entering the world of counterfeiting gives rise to a sixth aggravating circumstance: he drew into his activities a wife who did not even know his true name. Either he enlisted her unwitting assistance or he persuaded her to join his work; in either event, his conduct goes enormously beyond a mere failure to appear for court.

Based on the foregoing, the court concludes that aggravating circumstances appear to an extent and degree not adequately considered by the Sentencing Commission, and that departure is appropriate. *See* U.S.S.G. § 5K2.0. *Lechuga, Agoro,* and *Lacey* indicate that the Guidelines contemplate

a simple flight offense that stands alone in enhancing a defendant's offense level under U.S.S.G. § 3C1.1, but the Guidelines do not address a situation in which other conduct justifies, and is alone relied upon for, an enhancement under U.S.S.G. § 3C1.1, leaving the flight unaddressed. In the straightforward *Lechuga*, *Agoro*, or *Lacey* type of case, the flight is punished through U.S.S.G. § 3C1.1. The court does not believe that the Sentencing Commission intended that the flight of one who already has performed acts that would trigger U.S.S.G. § 3C1.1 should go unpunished. To avoid "double counting" is one thing; to avoid counting altogether is quite another.

### c.

■ The court does not believe that it is estopped to depart, or that the government is estopped to seek departure, on the failure to appear "branch" of the sentence under *Lechuga* by virtue of having failed to depart or seek departure when sentencing on the counterfeiting "branch". Whether facts exist to empower a court to depart is a mixed question of fact and law, *see United States v. Higgins*, 967 F.2d 841 (3rd Cir.1992), but whether to depart once authority is found to exist is a matter of discretion. *United States v. Sherod*, 960 F.2d 1075, 1078 (D.C.Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992). The court sentenced Mr. Sarna in the counterfeiting case with full recognition that the failure to appear case lay ahead, and Mr. Sarna had not pleaded guilty to the failure to appear charge when he was sentenced on the counterfeiting charge. The 87–month sentence imposed on the counterfeiting charge adequately reflected the seriousness of that conduct; departure was unnecessary.

To hold that the government must have sought a departure in the first sentencing would be to say that the government may not seek to punish post-plea agreement crimes without risking the validity of the plea agree-

ment[2] and creating the possibility of trial on the earlier crime, a trial delayed three to four years by the defendant's post-plea crime.

### d.

All departures must be "structured" in accordance with the Guidelines. *United States v. Eiselt*, 988 F.2d 677, 680 (7th Cir. 1993). *Lechuga* teaches that the pre-departure sentencing range effectively is the range applicable to the underlying offense. In the counterfeiting case, Mr. Sarna's offense level was 25 and his criminal history category was III, producing a sentencing range of 70 to 87 months. Because the facts relied on for departure in this case relate to conduct in which Mr. Sarna engaged while not appearing for sentencing, the closest parallel in the Guidelines is the two-level enhancement for obstruction of justice under § 3C1.1. Mr. Sarna's counterfeiting sentence was enhanced under § 3C1.1, but that enhancement was based on wholly different, pre-flight conduct.

Accordingly, the court believes that the departure should consist of a two-level increase in offense level, producing a sentencing range of 87 to 108 months. Because Mr. Sarna already has been sentenced to 87 months on the counterfeiting charge, the adjusted sentencing range under *Lechuga* is 0 to 21 months. The court believes that the maximum sentence within that range, or 21 months, is appropriate.[3]

### B.

The court has arrived at this sentence without reference to the Guideline provisions for failure to appear. In the event it should be determined in a later proceeding that this court misinterpreted *Lechuga*, it should be noted that the same sentence would have been reached under application of those Guidelines.

---

2. Issues might arise, for example, as to whether seeking an upward departure is inconsistent with a promise to recommend a mid-range sentence.

3. If the court departed under U.S.S.G. § 4A1.3, as the government alternatively argues, rather than under U.S.S.G. § 5K2.0, the offense level found in the counterfeiting case would remain at 25, but the criminal history category would increase from III to IV, producing a sentencing range of 84 to 105 months, and would produce a net sentence on the failure to appear charge of 18 months.

The base offense level for violation of 18 U.S.C. § 3146(a)(1) is 6. U.S.S.G. § 2J1.6(a)(2). U.S.S.G. § 2J1.6(b)(2)(A) provides for a nine-level enhancement of the offense level if the underlying offense is punishable by imprisonment for a term of fifteen years. The court disagrees with Mr. Sarna's contention that the ten-year cap in his plea agreement on the counterfeiting case—an agreement reached before his failure to appear—renders that provision inapplicable. The counterfeiting offense was punishable by imprisonment for fifteen years. 18 U.S.C. § 471. The commentary to U.S.S.G. § 2J1.6, which is binding unless contrary to statute or the Guidelines themselves, *Stinson v. United States*, — U.S. —, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), describes the offense level as increasing "in relation to the statutory maximum of the underlying offense." Case law unanimously holds that the statutory maximum controls when the defendant flees before trial or sentencing. *United States v. Sanchez*, 995 F.2d 468 (3rd Cir.1993); *United States v. Kincaid*, 959 F.2d 54 (6th Cir.1992); *United States v. Gardiner*, 955 F.2d 1492 (11th Cir.1992); *United States v. Harper*, 932 F.2d 1073 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 443, 116 L.Ed.2d 462 (1991); *United States v. Williams*, 932 F.2d 1515 (D.C.Cir.1991). Those cases are particularly persuasive when, as here, the lower limitation on the court's sentencing authority is based on an agreement connected to a guilty plea the court had not yet accepted; unlike the defendant in *United States v. Lee*, 887 F.2d 888 (8th Cir.1989), Mr. Sarna had not yet been sentenced. The Guidelines treat post-sentence flight differently. *See* U.S.S.G. § 2J1.6, Application Note 4. Pursuant to U.S.S.G. § 2J1.6(b)(2)(A), Mr. Sarna's offense level would be increased to 15.

Finally, the offense level would be reduced to a total level of 13 due to Mr. Sarna's acceptance of responsibility for the offense of conviction. U.S.S.G. § 3E1.1(a).

Mr. Sarna's criminal history category would be computed solely on his first counterfeiting conviction; the sentence for the underlying offense would not be counted because Mr. Sarna fled before sentencing. *See* U.S.S.G. § 2J1.6, Application Note 4. The single prior conviction produces three criminal history points, placing him in criminal history category II.

An offender at offense level 13 and criminal history category II faces a sentencing range of 15 to 21 months. Again, the court would impose the sentence at the top of the range, or 21 months.

### C.

U.S.S.G. § 5G1.3(b) does not require concurrent sentencing. Although the court's earlier sentencing memorandum mentioned that Mr. Sarna's flight could have warranted an enhancement for obstruction of justice and a sentence at the high end of the sentencing range, other factors were sufficient to compel those results; thus, unlike the defendant in *United States v. Lacey*, Mr. Sarna is not already serving a sentence resulting from his failure to appear. Accordingly, the court turns to the policy statement in U.S.S.G. § 5G1.3(c), which directs consecutive sentencing "to the extent necessary to achieve a reasonable incremental punishment for the instant offense." Because the sentence for the failure to appear charge is based on a departure, followed by a reduction of the post-departure range to reflect the counterfeiting sentence, the entire sentence must run consecutively to achieve a reasonable incremental punishment.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, James Sarna, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of twenty-one (21) months. This term of imprisonment shall run consecutively to his imprisonment in this court's Cause No. SCr. 89–63M.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three (3) years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, and shall comply with the stan-

dard conditions of supervised release that have been adopted by this court.

Because the defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the Sentencing Guidelines, the court imposes no fine.

It is further ordered that the defendant shall pay to the United States a special assessment of $50.00, which shall be due immediately.

The court recommends that the Bureau of Prisons designate the Federal Correctional Institution at Springfield, Missouri or the Federal Correctional Institution at Oxford, Wisconsin as the place for the service of the defendant's sentence.