UNITED STATES of America,
Plaintiff–Appellee,

v.

James J. SARNA, Defendant–Appellant.

No. 93–3681.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1994.

Decided June 30, 1994.

William T. Grimmer, Asst. U.S. Atty., Dennis Buckley (argued), Office of U.S. Atty., South Bend, IN, for plaintiff-appellee.

Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, IN (argued), for defendant-appellant.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

In October 1989, James Sarna pleaded guilty to counterfeiting obligations of the United States in violation of 18 U.S.C. §§ 2 and 471. Sarna was released on bail on the condition that he appear in the courtroom of Judge Robert L. Miller, Jr., on January 23, 1990, to receive his sentence. Sarna failed to do so and consequently was indicted under 18 U.S.C. § 3146(a)(1), for failure "to appear before the court as required by the conditions of his release." On April 7, 1993, agents of the United States Secret Service arrested Sarna in Lee's Summit, Missouri, and returned him to the Northern District of Indiana.

In June 1993, the district court sentenced Sarna to 87 months in prison for the counterfeiting offense. One month later, Sarna pleaded guilty to the charge of failure to appear for sentencing. For that offense, the district court sentenced Sarna to 21 months in prison, to be served consecutive to the sentence in the counterfeiting case, 834 F.Supp. 292. In arriving at that sentence the court rejected Sarna's argument that the imposition of a term of imprisonment for his failure to appear for sentencing was barred by the Sentencing Guidelines, *see* U.S.S.G. §§ 3D1.2(c), 5G1.3(b), 2J1.6 comment. nn. 3, 4, 3C1.1 comment. n. 6, and *United States v. Lechuga*, 975 F.2d 397 (7th Cir.1992). Sarna appeals, and we affirm.[1]

**I**

When a defendant is convicted in separate trials of two crimes that would have been grouped for sentencing purposes if they had been consolidated in a single trial, the

1. Sarna's 87–month sentence for the counterfeiting offense was affirmed, without oral argument, by another panel of this court. *See United States* *v. Sarna*, No. 93–2497, 1994 WL 273879 (7th Cir. June 20, 1994) (unpublished order).

court conducting the second trial should impose a total sentence commensurate with what the defendant would have received if the offenses had been the subject of a single trial. This is so even if the second court would have to depart downward from the Guidelines to achieve such a result. U.S.S.G. § 5G1.3 comment. n. 2; *Lechuga*, 975 F.2d at 400. When a defendant has been convicted of an underlying offense and a failure to appear offense at a single trial, the Application Notes to the Sentencing Guidelines expressly provide that those offenses should be grouped for sentencing. Application Note 3 of § 2J1.6 to the November 1, 1992, Guidelines provides that "in the case of a conviction on both the underlying offense and the failure to appear, the failure to appear is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense; and the failure to appear count and the count(s) for the underlying offense are grouped together under § 3D1.2(c)." *See also* U.S.S.G. § 3C1.1 comment. n. 6. This grouping results in a single sentencing range for the underlying offense and the failure to appear. The total sentence for the two offenses must fall within this sentencing range unless grounds for departure exist. *Lechuga*, 975 F.2d at 401. The term of imprisonment for the failure to appear must be consecutive to the term of imprisonment for the underlying offense. 18 U.S.C. § 3146(b)(2).

## II

Sarna contends that, if the counterfeiting offense and the failure to appear had been consolidated in one trial, the maximum sentence that he could have received for both offenses would have been 87 months in prison. According to Sarna, if the offenses had been the subject of one trial, the failure to appear would have been treated as an obstruction of justice relating to the underlying counterfeiting offense. When added to the base offense level of 23, that enhancement would have yielded a level 25 offense. The level 25 offense combined with a criminal history category of III would have produced a sentencing range of 70 to 87 months' imprisonment.

This proposed calculation of the appropriate sentencing range assumes that the only conduct relevant to the determination of the offense level is the underlying counterfeiting offense and the failure to appear. That was the situation in *Lechuga*. There the appropriate offense level, 28, was reached by summing the offense level for the underlying drug-related offenses, 26, and the two-level enhancement for the failure to appear. 975 F.2d at 401. What of the case, like this one, in which the sentencing court identifies conduct other than the failure to appear that might serve as a ground for an obstruction of justice enhancement? In addition, what about activities engaged in by the defendant after his failure to appear which might serve as grounds for departure from the guideline range? Sarna's conduct before his arrest for counterfeiting, if part of the same course of conduct as the counterfeiting offense, is relevant to the determination of the appropriate offense level. U.S.S.G. § 1B1.3(a). And Sarna's activities while a fugitive, if they constitute aggravating circumstances of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines, constitute grounds for an upward departure from the applicable guideline range. 18 U.S.C. § 3553(b).

The district court here attempted to impose a total sentence that would account for, among other things, Sarna's conduct before his arrest for counterfeiting and his activities while a fugitive. In sentencing Sarna for the counterfeiting offense, the court enhanced the base offense level of 23 by two for obstruction of justice. In its sentencing memorandum, the court explained that the primary basis for the enhancement was a July 1989 telephone conversation between Sarna and Larry Brown (one of Sarna's confederates in the counterfeiting operation) during which Sarna offered to help Brown abscond from charges pending against him in Wisconsin. The court noted, however, that Sarna's own failure to appear for sentencing "would suffice to trigger the enhancement for obstruction of justice under U.S.S.G. § 3C1.1 if other grounds did not exist already." Sarna fell into Criminal History Category III which, combined with the offense level of 25, yielded

a sentencing range of 70 to 87 months. The court imposed a sentence of 87 months' imprisonment.

In sentencing Sarna following Sarna's plea of guilty to the charge of failure to appear, the court recognized that, because it already had imposed the maximum sentence within the applicable guideline range, *Lechuga* precluded the imposition of a sentence for failure to appear unless there were grounds for departing upward from the guideline range. The court identified six aggravating circumstances which it believed justified an upward departure. It increased the applicable offense level by two, which yielded a total sentencing range of 87 to 108 months. The court imposed an additional sentence of 21 months' imprisonment, bringing Sarna's total sentence to 108 months' imprisonment.[2]

Sarna argues that the district court's imposition of the consecutive 21–month sentence for the failure to appear was improper because the conduct for which the sentence was imposed—his activities while a fugitive—already had been used by the court as a ground for the obstruction of justice enhancement with respect to the underlying counterfeiting offense. He analogizes this case to *United States v. Lacey*, 969 F.2d 926 (10th Cir.1992), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). There the defendant fled the jurisdiction before his trial for drug-related offenses and was subsequently convicted of the offenses *in absentia*. After he had been apprehended, the defendant pleaded guilty to a charge of failure to appear. In sentencing the defendant for the drug offenses, the court enhanced the offense level by two for obstruction of justice based on the defendant's failure to appear for trial. *Id.* at 929. Shortly thereafter, in a separate proceeding, the court imposed the maximum sentence allowed by U.S.S.G. § 2J1.6, for the defendant's failure to appear for trial. *Id.* The Tenth Circuit vacated the sentences because the sentencing court impermissibly used the same conduct—the defendant's failure to appear for trial—for the dual purpose of enhancing the offense level of the drug-related offenses and of imposing a consecutive sentence for the offense of failure to appear. *Id.* at 930.

According to Sarna, the court in the present case committed this same error by using his failure to appear for sentencing as a secondary ground for an obstruction of justice enhancement to the offense level of the counterfeiting offense and by subsequently using his activities while a fugitive to support an upward departure from the guideline range. We disagree. The district court in this case, unlike the sentencing court in *Lacey*, did not rely upon a simple failure to appear to support both an obstruction of justice enhancement and an additional, consecutive sentence. On the contrary, the

2. The court also calculated Sarna's sentence for the failure to appear using the Guideline provision for failure to appear, U.S.S.G. § 2J1.6, and a Criminal History Category of II, and reached a sentencing range of 15 to 21 months. Section 2J1.6 required the court to use a base offense level of six, and to add nine levels if the underlying offense was punishable by at least 15 years in prison or six levels if the underlying offense was punishable by at least five, but less than 15, years in prison. The plea agreement relating to the counterfeiting offense stipulated that Sarna would receive a sentence of no more than 10 years in prison, but the maximum sentence for counterfeiting is 15 years in prison. 18 U.S.C. § 3146(a)(1). On this basis, the district court added nine levels to the offense level for the failure to appear offense. At his sentencing, and in this appeal, Sarna argues that because his plea agreement imposed a 10–year cap on his possible sentence for the counterfeiting offense, the court should have added only six levels. Whether a plea agreement or the statutory maximum should control when a defendant fails to appear for sentencing is an open question in this Circuit. Every court of appeals that has considered the question has concluded that the statutory maximum controls. *See United States v. Sanchez*, 995 F.2d 468 (3d Cir.1993); *United States v. Kincaid*, 959 F.2d 54 (6th Cir.1992); *United States v. Gardiner*, 955 F.2d 1492 (11th Cir.1992); *United States v. Harper*, 932 F.2d 1073 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 443, 116 L.Ed.2d 462 (1991); *United States v. Williams*, 932 F.2d 1515 (D.C.Cir.1991); *United States v. Agbai*, 930 F.2d 1447 (10th Cir.1991); *United States v. Nelson*, 919 F.2d 1381 (9th Cir.1990). We need not decide whether the plea agreement or the statutory maximum controls in this case because the offense level yielded by the counterfeiting offense plus the two-level enhancement for obstruction of justice is greater than the offense level for the failure to appear offense, even with a nine-level addition, and thus controls the calculation of Sarna's sentence. *See* U.S.S.G. § 3C1.1 comment. n. 6.

court used Sarna's failure to appear for sentencing to support the obstruction of justice enhancement and Sarna's activities while a fugitive to support the additional, consecutive sentence of 21 months' imprisonment. Under *Lacey*, as under *Lechuga*, a simple failure to appear, if used by a court in computing a defendant's sentence, must be treated as an obstruction of the underlying offense. But neither *Lechuga* nor *Lacey* contemplates post-flight conduct.

The distinction between a simple failure to appear for sentencing, for which the Sentencing Commission has provided punishment, *see* U.S.S.G. § 2J1.6, and aggravating circumstances related to a failure to appear, which the Commission might not have considered in drafting the Guidelines, is fundamental to our decision in this case. Even if the district court's reference to Sarna's failure to appear *as a secondary ground* for the obstruction of justice enhancement really means that the court relied on the failure to appear to justify the enhancement, Sarna's conduct while a fugitive can serve as an independent basis for an upward departure from the Guidelines.

A sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). If Sarna had been sentenced for counterfeiting and failure to appear in a single proceeding, the sentencing court could have relied exclusively upon Sarna's failure to appear as a ground for the obstruction of justice enhancement and also relied upon Sarna's aggravated conduct while a fugitive as a ground for an upward departure. This assumes, of course, that the fugitive conduct constituted an aggravating circumstance within the meaning of 18 U.S.C. § 3553(b).

In the case before us, where there were *two* proceedings, these same sentencing elements could apply. That is, in the first proceeding the court could have used Sarna's failure to appear as a ground for an obstruc-

tion of justice enhancement and then, in the second proceeding, used Sarna's aggravated conduct while a fugitive to depart upward. But a lawful sentence could also have been reached using different sentencing elements. The court here did not rely exclusively upon Sarna's failure to appear as a ground for the obstruction of justice enhancement but instead used Sarna's offer of assistance to Larry Brown as the primary ground for that enhancement. Understandably, the court wanted to ensure that Sarna would be punished for that conduct. We need not decide whether the court could have subsequently used Sarna's *simple* failure to appear as a ground for an upward departure from the Guidelines. Whatever the answer to that question, the court could still use Sarna's activities while a fugitive for an upward departure if those activities were aggravating circumstances within the meaning of 18 U.S.C. § 3553(b).

### III

■ The central issue in this case is thus whether the district court properly concluded that grounds existed for an upward departure from the sentencing range of 70 to 87 months. Our review is guided by 18 U.S.C. § 3742(e)(3), which instructs us to determine whether a sentence outside the applicable guideline range is reasonable in light of permissible factors and in view of the reasons given by the district court for a departure. In this connection, we employ a three-part test. *United States v. Seacott*, 15 F.3d 1380, 1386 (7th Cir.1994). First, we determine whether the district court has stated adequate grounds for the departure. This is a question of law and, as such, is reviewed *de novo*. Second, we determine whether the facts cited in support of the departure actually exist. This determination is reviewed under the clearly erroneous standard. Third, we determine whether the degree of departure is linked to the structure of the Guidelines. The district court's findings on the degree of departure are given deference.

There is always an opening for factors that have not been given adequate consideration by the Sentencing Commission in formulating the Guidelines. A court may depart from

the Guidelines based upon a factor supplementing those considered by the Sentencing Commission. U.S.S.G. § 5K2.0 policy statement. In addition, a court may depart, even if the factor relied upon for departure was considered by the Sentencing Commission, if the court determines that, in light of unusual circumstances, the guideline related to that factor is inadequate. *Id.* In the case before us, the district court departed because it concluded that the guideline attached to the offense of failure to appear was, given the circumstances of this case, inadequate. According to the court, Sarna did more than simply fail to appear for sentencing. He fled the jurisdiction, abandoning his wife in the process. He traveled and worked under assumed names, even acquiring an Indiana driver's license in the name of Thomas Hollander. He led authorities on a three-year chase. He married a new wife using the name Matthew J. Hollbrook, and his new wife did not learn of his true identity until his arrest. In the months immediately preceding his arrest in Missouri, Sarna purchased darkroom photography equipment and a printing press, presumably to begin another counterfeiting operation. And, finally, Sarna drew his new wife into his illicit activities.

■ Some of these grounds do not support a departure from the Guidelines. Fleeing the jurisdiction seems to us to inhere in the offense of failure to appear. It is certainly not uncommon for a defendant who chooses to avoid sentencing for a criminal offense to leave the jurisdiction in which he was convicted of the offense. The case before us can be distinguished from *United States v. Cherry,* 10 F.3d 1003 (3d Cir.1993), where the defendant's flight and 20–year stay in Cuba to avoid prosecution for the murder of a police officer were found to support an upward departure from the applicable guideline range. The important factors in that case— flight to a country from which extradition was not possible and an unusually long absence—are not present in this case. Similarly, two other grounds for departure proffered by the district court, traveling and working under assumed names and evading law-enforcement authorities, are types of conduct that commonly inhere in the offense of failure to appear.

Whether Sarna's abandonment of his wife and marriage to a woman who did not know his true identity are valid grounds for departure is a closer question, but there is no need to answer it. For the strongest ground for departure cited by the district court is Sarna's purchase of darkroom photography equipment and a printing press, presumably to start another counterfeiting operation. We agree with the district court that U.S.S.G. § 2J1.6 does not adequately account for these post-flight activities. Although that provision takes into account the seriousness of the underlying crime in setting the appropriate punishment for a failure to appear for sentencing, it does not contemplate a defendant's post-flight activities, beyond those actually undertaken in furtherance of the failure to appear.

Similarly, the provision for obstruction of justice, U.S.S.G. § 3C1.1, does not account for Sarna's post-flight activities. Section 3C1.1 only punishes conduct that obstructs the investigation, prosecution or sentencing with respect to the underlying offense. Of course, if a defendant were charged with, and convicted of, committing a criminal offense while a fugitive, he would be punished for that offense under the appropriate guideline provision. But the Guidelines do not account for post-flight conduct if it goes uncharged.

The district court's finding that in the months immediately preceding his arrest in Missouri Sarna was taking steps to start up another counterfeiting operation is not clearly erroneous. At sentencing, Sarna strenuously denied that the darkroom photography equipment and printing press that were found in the garage of his residence were to be used for counterfeiting. He maintained that his wife planned to use the equipment for her anticipated photography and silk screen business. The court properly rejected Sarna's explanation as farfetched. Photographic negatives of a $100 bill, a $50 bill and a $20 bill were found with the equipment in Sarna's residence. The windows of the garage containing the printing press were covered with black plastic. Sarna and his wife purchased the photographic equipment under the aliases of Bill and Sarah Stevens, in one

instance representing themselves to be father and daughter. And they opened a post office box to provide an address for "Cameo Photography" under still another alias. We may grant that the use of aliases and the obscuration of one's home are consistent merely with being a fugitive from justice, who does not want to be discovered. But the possession of photographic negatives of United States currency goes farther. And the use of an alias by Sarna's wife, who had no idea that Sarna was a fugitive, indicates something more than flight.

■ Having concluded that the district court properly decided to depart upward from the guideline range of 70 to 87 months, we must determine whether the extent of the departure, 21 months, was appropriate. As the district court recognized, "[d]epartures, whether upward or downward, must be linked to the structure of the guidelines." *United States v. Thomas,* 930 F.2d 526, 530 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). The district court linked its departure to the provision for obstruction of justice, U.S.S.G. § 3C1.1. This was entirely proper. The facts relied on for departure related to conduct in which Sarna engaged after he failed to appear for sentencing. The failure to appear itself is treated as an obstruction of justice. Sarna's conduct while a fugitive may be characterized as a further obstruction of justice.

Linking the departure to the obstruction of justice provision has the practical effect of increasing the applicable offense level from 25 to 27. This, in turn, produces a sentencing range of 87 to 108 months. The imposition of a 21–month sentence consecutive to Sarna's 87–month sentence was therefore within an appropriate sentencing range.

### IV

Sarna's total sentence for the counterfeiting offense and the failure to appear is commensurate with what he would have received if the offenses had been grouped at a single trial. The district court's finding that Sarna, while a fugitive, planned to start another counterfeiting operation is not clearly erroneous and is a valid basis for an upward depar-

ture from the sentencing range of 70 to 87 months. An upward departure of 21 months is within the district court's discretion. Sarna's total sentence of 108 months in prison therefore is AFFIRMED.