NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 3, 2007
Decided October 26, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 06-2801

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* v. SHAABAN HAFIZ AHMAD ALI SHAABAN, *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. 05 CR 34 John Daniel Tinder, *Judge.* |

**O R D E R**

Shaaban Hafiz Ahmad Ali Shaaban was convicted of multiple offenses related to his dealings with the Iraqi Intelligence Service ("IIS") shortly before the United States invaded in 2003.  He was sentenced to a total of 160 months' imprisonment.  On appeal he argues that the district court erroneously assessed more than the two offense levels allowed for obstructive conduct under U.S.S.G. § 3C1.1 and, therefore, his sentence should be vacated. For the reasons set forth in this order, we affirm the judgment of the district court.

# I

# BACKGROUND

Mr. Shaaban, a Jordanian-born Palestinian who had acquired United States citizenship, began conversations with the IIS through the Iraqi Mission to the United Nations in 2002. At trial a former IIS agent testified that Mr. Shaaban traveled to Iraq in October 2002 in an attempt to sell the names of CIA agents working covertly in Iraq, which he claimed he could acquire through a CIA operative secretly working for the Russian intelligence service. The IIS agents rejected his offer, in part because Mr. Shaaban refused to provide a sample of the information, but Mr. Shaaban remained in contact with the IIS. Their conversations, which federal agents began to monitor around the time of Mr. Shaaban's trip to Iraq, included further negotiations over the list of CIA operatives as well as a proposed plan for the IIS to fund Mr. Shaaban's creation of a TV station in the United States. Federal agents eventually arrested Mr. Shaaban in March 2005.

Before trial and while in custody, Mr. Shaaban sent a letter to his older brother in California threatening serious bodily harm if the brother did not lie at Mr. Shaaban's trial. At trial Mr. Shaaban, who represented himself with help from standby counsel, claimed that he had an identical twin who committed some of the unlawful acts alleged in the indictment. No witness corroborated his claim. Mr. Shaaban also testified that his travel to Iraq was part of a secret CIA mission. The jury rejected Mr. Shaaban's defenses and, after a ten-day trial, found him guilty of conspiring to act, and acting, as a foreign agent of the government of Iraq without notifying the attorney general, *see* 18 U.S.C. § 371; 951(a); traveling to Iraq in violation of the International Emergency Economic Powers Act, *see* 50 U.S.C. § 1701; procuring an Indiana commercial driver's license and American citizenship by fraud, *see* 18 U.S.C. §§ 1028(a)(1), 1425(a); and tampering with a witness, *id.* § 1512(b)(1).

The probation officer recommended a guidelines imprisonment range of 97 to 121 months based on a total offense level of 30 and a Category I criminal history. To calculate the offense level, the probation officer started with a base offense level of 26, *see* U.S.S.G. § 2M5.1(a)(1)(B), and added two levels for obstruction of justice, *see id* § 3C1.1, and two more because of the multiple counts, *see id.* § 3D1.1. Neither Mr. Shaaban nor the Government objected to these recommendations. Mr. Shaaban argued for a sentence within the guidelines range calculated by the probation officer, and the Government argued for a sentence above that range based in part on Mr. Shaaban's multiple acts of obstructive conduct. To bolster its argument, the Government produced transcripts of phone calls Mr. Shaaban made

while in pretrial custody, which the district court ruled were consistent with his effort to "fabricate and manufacture" a false defense.

At sentencing the district court agreed with the Government that a prison term greater than 121 months was warranted based on Mr. Shaaban's obstructive conduct. The court seemingly spoke as if it was imposing a sentence within a revised guidelines range that it calculated by giving Mr. Shaaban a six-level increase for obstruction instead of the two levels recommended by the probation officer and allowed by the guidelines. The court thus arrived at a total offense level of 33, which corresponds to a guidelines imprisonment range of 135 to 168 months. The court then imposed a total prison sentence of 160 months, which it characterized as within, but near the top, of the guidelines range. Mr. Shaaban did not object to this methodology or to the court's purported revision of the guidelines range.

The district court's written statement of reasons, which was issued one month and a day after sentencing, offers a different explanation for how the court arrived at its sentence of 160 months. The statement of reasons recites that the court first calculated the offense level to be 30, as the probation officer recommended. Statement of Reasons at 2. Then, after correctly calculating the range, the court imposed an above-guidelines sentence because it believed that Mr. Shaaban's multiple acts of obstruction were "not adequately addressed by a two level increase to the offense level." Id. The text accompanying a checked check-box in the statement of reasons indicated that "[t]he court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual." Id.

Mr. Shaaban appealed, but his appointed attorney initially moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he could not discern a nonfrivolous ground for appeal. Based on Mr. Shaaban's own submission under Circuit Rule 51(b), however, we denied counsel's motion and ordered him to address whether the district court miscalculated the guidelines range by adding more than two levels for obstruction of justice. *United States v. Shaaban*, No. 06-2801 (7th Cir. Mar. 14, 2007).

.

## II

## DISCUSSION

Mr. Shaaban's sole argument is that the district court miscalculated his guidelines range by adding more than the two levels permitted for obstruction under § 3C1.1. "We review the district court's application of the Guidelines de novo

and its factual determinations for clear error." *United States v. Warren*, 454 F.3d 752, 762 (7th Cir. 2006).

The Government contends that the additional levels were not used in calculating the guidelines range, but instead were "included as upward departures." Gov't Br. at 28. The Government acknowledges that *Booker v. United States*, 543 U.S. 220 (2005), rendered the term "departure" obsolete, but it contends that any error in the way the district court articulated its methodology was harmless.

The sentencing transcript, standing alone, does not clearly answer whether the district court erroneously added additional guideline levels, as Mr. Shaaban insists, or sentenced on the basis of a pre-*Booker* "departure," as the Government suggests. Our analysis does not rest on the transcript alone; we also consider any written explanation given by the district court for the sentence imposed. *United States v. Baker*, 445 F.3d 987, 991-92 (7th Cir. 2006). In this instance, the statement of reasons entered by the district court after the sentencing hearing convinces us that the Government's understanding of the district court's methodology is the correct one. The statement of reasons documents that Mr. Shaaban's total offense level is 30, meaning that Mr. Shaaban was assessed only two levels for obstruction and that his advisory guidelines range was calculated correctly.

The written statement also demonstrates that Mr. Shaaban received a sentence above the guidelines range--that the district court called an "upward departure"--based on his "multiple acts of obstruction not adequately addressed by a two level increase to the offense level." Statement of Reasons at 2. Thus, there was no error in calculating the guidelines range; at the sentencing hearing the district court simply mispoke about the manner in which it arrived at a sentence above the range. Essentially the court was "adding" additional levels to Mr. Shaaban's true offense level as a means of guiding the degree to which the court went above the guidelines range. *Cf. United States v. Johnson*, 427 F.3d 423, 425 (7th Cir. 2005) (district court chose sentence within "departure range" calculated by "adding" levels to defendant's true offense level); *United States v. Sarna*, 28 F.3d 657, 663 (7th Cir. 1994) (district court calculated extent of departure for failure to appear at sentencing by increasing sentence by the same amount it had already increased it for other obstructive conduct). We approved of this practice before *Booker*. *United States v. Leahy*, 169 F.3d 433, 445 (7th Cir. 1999); *United States v. Scott*, 145 F.3d 878, 886 (7th Cir. 1998). After *Booker* we have said that it is not error for a sentencing judge to characterize a sentence outside the range as a "departure" absent "reason to think that the choice of words made a substantive difference." *United States v. Rosby*, 454 F.3d 670, 676-77 (7th Cir. 2006). Here, the terminology did not make a substantive difference.

Finally, we note that in addition to correctly calculating the guidelines range, the district court, as it was required to do, imposed a reasonable sentence in light of the factors set out in 18 U.S.C. § 3553(a). *See United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006).

For the foregoing reasons, we affirm Mr. Shaaban's sentence.

AFFIRMED